Gerald JACKSON, a/k/a Gerald Day, Charles S. Beaufort, Emanuel Gardner, Anthony Sanders, a Minor, by Alice Sanders, his guardian, and William Respass, on behalf of themselves and all others similarly situated,

v.

Edward J. HENDRICK, individually and as Superintendent of Philadelphia Prisons, James H.J. Tate, individually and as Mayor of the City of Philadelphia, Paula D'Ortona, William F. Boyle, Edgar C. Campbell, Sr., Edward R. Cantor, Thomas M. Foglietta, John B. Kelly, Jr., W. Thacher Longstreth, William J. Cottrell, William A. Cibotti, Charles L. Durham, George X. Schwartz, Thomas McIntosh, Joseph L. Zazyczny, Harry P. Jannotti, David Cohen, Isadore H. Bellis, David Silver, Individually and as Members of the City Council of the City of Philadelphia, Randolph E. Wise, Individually and as Welfare Commissioner, Daniel B. Michie, Jr., Paul A. Rafferty, Charles P. Mirarchi, Jr., Arthur W. Thomas, A. Charles Peruto, individually and as members of the Board of Trustees of Philadelphia Prisons, Joseph P. McGowan, Warden of Holmesburg Prison, John B. McGuire, Warden of Eastern State Penitentiary, Patrick M. Curran, Warden of the Detention Center, Louis S. Aytch, Warden of the House of Correction, City of Philadelphia.

Appeal of CITY OF PHILADELPHIA, Appellant.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1997.

Decided March 27, 1998.

Richard Feder, Philadelphia, for appellant.

David Rudovsky, Philadelphia, for appellees.

Before COLINS, President Judge, and McGINLEY, SMITH, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

FRIEDMAN, Judge.

 The City of Philadelphia (City) appeals from two orders of the Court of Common Pleas of Philadelphia County (trial court), each of which holds the City in contempt for failing to comply with a September 6, 1991 consent decree (Consent Decree) governing conditions in the City's prison system and orders the City to pay monetary sanctions for its noncompliance. Because this court lacks jurisdiction over the matter, we quash the City's appeal.[1]

The tangled history of this case spans over twenty-five years; a brief history of the litigation is important to an understanding of the current appeal. In 1971, five prisoners in the City's prison system (Prisoners) filed a class action suit in equity in the trial court against City officials seeking injunctive relief from conditions of confinement alleged to violate the Prisoners' constitutional and statutory rights. *Jackson v. Hendrick*, 509 Pa. 456, 503 A.2d 400 (1986). In 1972, the trial court held that the Prisoners' conditions of confinement violated their constitutional and statutory rights and amounted to cruel and unusual punishment under the federal and state constitutions. *Id.* The trial court ordered the City to take immediate action to improve prison conditions. *Id.*

Throughout the course of the twenty-five year litigation, the parties have entered into a series of consent decrees which set forth the measures that the City must take to provide for constitutionally adequate living conditions, services and programs for inmates in the City's prison system. The parties are currently bound by the Consent Decree.[2] The Consent Decree imposes obligations on the City with respect to virtually every aspect of prison life and empowers the trial court to impose monetary fines for noncompliance with the Consent Decree.

On November 9, 1995, the Prisoners filed a motion for contempt of court that triggered the instant dispute.[3] The Prisoners alleged

---

1. Before this court *en banc*, the City and the Prisoners argued the merits of the City's appeal. At oral argument, however, President Judge Colins requested that the parties submit post-argument letter-briefs addressing whether this court has jurisdiction to consider the City's appeal. This court may raise the issue of jurisdiction *sua sponte*. *Davis v. City of Philadelphia*, 702 A.2d 624 (Pa.Cmwlth.1997). Because we are constrained to conclude that this court lacks jurisdiction to consider the City's appeal, the merits of the appeal will not be addressed.

2. In 1986, our supreme court, noting the long period of time that had elapsed since the initial findings of unconstitutional conditions in the prison system, remanded the Prisoners' case to the trial court and ordered a new hearing on the status of the City's prison conditions. *Jackson.* On remand, the parties negotiated a new consent decree, entered August 4, 1988. Subsequent to the August 4, 1988 consent decree, the Prisoners filed a contempt petition, and, on July 29, 1990, the trial court held the City in contempt. The City filed a notice of appeal, but, upon further negotiation, the parties entered into an Amended Agreement of Settlement which the trial court approved on September 6, 1991 (the Consent Decree), (R.R. at 12a–82a); the City subsequently withdrew its appeal. The September 6, 1991

Consent Decree has governed this case since that date.

3. Previously, on March 23, 1993, the Prisoners filed a motion for contempt, complaining that the City was in violation of the Consent Decree. The trial court found the City in contempt and ordered the City to pay a $1,220,000.00 fine. (R.R. at 96a.) On October 20, 1994, the Prisoners again filed a motion for contempt. As a result, the parties entered into the Stipulation of January 17, 1995, wherein the City admitted that it was not in full compliance with certain provisions of the Consent Decree. (R.R. at 97a.) In February 1995, the Prisoners filed another motion for contempt; the Stipulation of May 18, 1995 resulted. (R.R. at 104a.) On March 20, 1995, the trial court held the City in contempt for violations relating to the October 20, 1994 motion for contempt and imposed a $701,500.00 fine. The City filed a Motion for Reconsideration of the trial court's contempt adjudication, but withdrew the motion in connection with a third stipulation agreement, the Stipulation of August 22, 1995. (R.R. at 108a.) The Stipulation of August 22, 1995 provided that "[I]f the City is not in full compliance with the provisions of the Consent Decree and Stipulation of January 17, 1995 by October 1, 1995, [the Prisoners] will seek the liquidated damages for each day of non-

that the City was not in compliance with the Consent Decree in various areas of prison life, including: failure to provide sufficient staffing of correctional officers and social workers; failure to provide the requisite services and programs to inmates; failure to provide minimally required personal supplies; and failure to provide vocational training. On October 2, 1996,[4] following hearings on the motion for contempt, the trial court entered an order holding the City in contempt for violating five provisions of the Consent Decree and fining the City $2,252,-500.00. (R.R. at 890a.)

In determining whether this court has jurisdiction to consider this appeal, it is essential to provide a timeline of the procedural events that followed the trial court's October 2, 1996 order.

- On October 25, 1996, the City filed a Motion for Reconsideration in response to the trial court's October 2, 1996 order. (R.R. at 907a.)

- On October 28, 1996, the City filed an appeal of the trial court's October 2, 1996 order to the Superior Court of Pennsylvania. (R.R. at 10a.)

- On November 19, 1996, the trial court entered an order vacating the October 2, 1996 order pending reconsideration.

- On December 5, 1996, the City withdrew its appeal to the Superior Court. (R.R. at 11a.)

- On March 11, 1997, the trial court entered an order reinstating its October 2, 1996 order and amending the fine to $2,095,000.00. (R.R. at 920a.)

- On March 13, 1997, the City filed an appeal of the trial court's October 2,

1996 order and March 11, 1997 order to this court. (R.R. at 924a.)

The Prisoners now argue that this court lacks jurisdiction to consider the City's appeal. We agree.

## I. Trial Court's November 19, 1996 Order

Our discussion of the procedural defects involved in the instant appeal begins with the trial court's November 19, 1996 order that attempted to vacate the trial court's previous October 2, 1996 order. The November 19, 1996 order, however, was null and void because the trial court lacked jurisdiction to vacate the order.

## A. Trial Court Untimely

■ A court may only modify, rescind or vacate an order within thirty days after it is entered. 42 Pa.C.S. § 5505;[5] 3 *Standard Pa. Practice 2d* § 15:55;[6] *see also Pennsylvania Dep't of Transp., Bureau of Driver Licensing v. Duncan*, 144 Pa.Cmwlth. 261, 601 A.2d 456 (1991); *Municipal Council of Monroeville v. Kluko*, 102 Pa.Cmwlth. 49, 517 A.2d 223 (1986). Here, the trial court vacated its October 2, 1996 order on November 19, 1996, more than thirty days after October 2, 1996. Thus, on November 19, 1996, the trial court lacked jurisdiction to vacate the October 2, 1996 order; as a result, the November 19, 1996 order was null and void. *See Kluko* (categorizing trial court's belated attempt to rescind its order as a nullity); 3 *Standard Pa. Practice 2d* § 15:57 (providing that "[b]ecause the statutory period is jurisdictional, it cannot be waived by the parties, and any belated attempt at modification of an order is a nullity.")

compliance." (R.R. at 111a.) The November 9, 1995 motion for contempt at issue here followed. The Prisoners filed a supplemental motion for contempt on February 12, 1996. (R.R. at 135a.)

4. For purposes of this opinion, we have identified all orders by the date in which the order was entered, or filed, in the Prothonotary's office, rather than the date upon which said order was signed by the judge. *See infra* pp. 105–106.

5. 42 Pa.C.S. § 5505 (emphasis added) provides:
 **Modification of orders**
 Except as otherwise provided or prescribed by law, a court upon notice to the parties may

modify or rescind any order *within 30 days* after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.
 As we discuss, *infra*, if an appeal has been taken, such as here, the trial court is immediately divested of jurisdiction of the matter, except in limited circumstances.

6. 3 *Standard Pa. Practice 2d* § 15:55 provides that "a final order may be altered during the 30-day period, but normally cannot be modified, rescinded or vacated after 30 days have passed." (footnotes omitted.)

The City argues that this court has jurisdiction to consider its appeal because the trial court acted in a timely manner by orally vacating the October 2, 1996 order within thirty days, during the October 31, 1996 hearing in which Judge Greenspan stated that "we are today vacating our [October 2, 1996] order...." (October 31, 1996 H.T. at 17.) We cannot accept the City's argument that the trial court vacated its October 2, 1996 order on October 31, 1996.[7]

As indicated above, 42 Pa.C.S. § 5505 permits a trial court to vacate an order only within thirty days after it is entered. For an order to be effective, however, it must be "entered." *See Schoff v. Richter,* 386 Pa. Superior Ct. 289, 562 A.2d 912 (1989). Until an order is filed with the Prothonotary, an order is not considered to have been entered. 3 *Standard Pa. Practice 2d* § 15:53. The date that an order is entered is the date that the order is filed with the Prothonotary. *Stotsenburg v. Frost,* 465 Pa. 187, 348 A.2d 418 (1975); *Vanleer v. Lerner,* 384 Pa. Superior Ct. 558, 559 A.2d 577 (1989); *Pine Township Citizens' Ass'n v. Pine Township Bd. of Supervisors,* 27 Pa.Cmwlth. 533, 367 A.2d 740 (1976). *But see* Pa. R.A.P 108; Pa. R.A.P. 905(a); *Yeaple v. Yeaple,* 485 Pa. 399, 402 A.2d 1022 (1979). Here, the trial court's order vacating its October 2, 1996 order was not filed with the Prothonotary until November 19, 1996; thus, that order was not *entered* until November 19, 1996. Because the trial court attempted to vacate its October 2, 1996 order on November 19, 1996, more than thirty days past the October 2, 1996 order, the trial court's November 19, 1996 order was untimely.[8]

### B. *Superior Court Retained Jurisdiction*

Because the trial court's November 19, 1996 order was entered more than thirty days after the October 2, 1996 order, it was null and void. Moreover, the November 19, 1996 order nonetheless would have been null and void because the trial court's October 2, 1996 order had been appealed to the Superior Court of Pennsylvania on October 28, 1996 and, thus, the trial court was without jurisdiction to enter its November 19, 1996 order.

---

**7.** The City relies on *Commonwealth v. Grady,* 309 Pa. Superior Ct. 187, 455 A.2d 112 (1982) and *Altemose Construction Co. v. Building & Construction Trades Council,* 449 Pa. 194, 200 n. 6, 296 A.2d 504, 508 n. 6 (1972), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973) to argue that Judge Greenspan's oral statement was a court order that should be dated October 31, 1996. These cases, however, are distinguishable from our case and cannot support the City's proposition. In *Grady,* a sentencing judge orally pronounced the sentence at a sentencing hearing but, subsequently, the judge increased the sentence when he issued a written order after the sentencing hearing was completed. The Superior Court of Pennsylvania held that the earlier oral sentence was binding because, otherwise, appellant's sentence would be increased and the increase would violate the Double Jeopardy Clause of the United States Constitution. Clearly, our case does not involve facts or issues similar to those in *Grady.*

*Altemose* is also distinguishable from our case because *Altemose* was an action in equity, not at law, and the entry of an adjudication in equity is controlled by Pa. R.C.P. 1517(b). *See also* 10 *Standard Pa. Practice 2d* § 65:2. In *Altemose,* a judge issued a decree on June 5, 1972 in the nature of a preliminary injunction. On June 12, 1972, the judge issued an oral decree continuing the preliminary injunction. On August 30, 1972, in compliance with court rules, the judge filed an opinion consisting of the court's findings of fact, discussion and conclusions of law with respect to the June 12, 1972 decree. Attached to the opinion, the judge included a decree, also dated August 30, 1972, that was a verbatim decree of that entered initially on June 5, 1972 and continued by oral decree on June 12, 1972, which was transcribed and filed with the Prothonotary. Our supreme court considered the August 30, 1972 decree to be a written formalization of the June 12, 1972 oral decree, from which the appeal was taken, and not a new decree entered on August 30, 1972. However, our case is neither factually nor legally analogous to *Altemose.* In *Altemose,* the date on the August 30, 1972 decree was of no consequence because it merely formalized what was in the earlier decree that had already been entered in accordance with Pa. R.C.P. 1517(b).

**8.** We note that Pennsylvania courts have acknowledged that results from this rule may be harsh; however, the courts have nonetheless strictly construed the statutory limit of 42 Pa.C.S. § 5505 because it serves a very definite function. *See Pennsylvania Dep't of Transp., Bureau of Driver Licensing v. Axsom,* 143 Pa.Cmwlth. 99, 598 A.2d 616 (1991), *overruled on other grounds by Shapiro v. Center Township, Butler County,* 159 Pa.Cmwlth. 82, 632 A.2d 994 (1993), *alloc. denied,* 537 Pa. 635, 642 A.2d 488 (1994); 3 *Standard Pa. Practice 2d* § 15:57.

It is well established that after an appeal is taken from a trial court's order, the trial court no longer has jurisdiction to proceed further in the matter. Pa. R.A.P. 1701(a).[9] Here, the City filed an appeal to the Superior Court on October 28, 1996 and did not withdraw its appeal until December 5, 1996. Thus, from the period of October 28, 1996 through December 5, 1996, the trial court was not permitted to vacate its October 2, 1996 order or proceed otherwise in the matter. *See Estate of Merrick*, 432 Pa. 450, 247 A.2d 786 (1968) (holding that a decree could not be changed by the lower court from the date upon which the appeal was taken until the date of its discontinuance). Because the trial court attempted to vacate its October 2, 1996 order during the time period that it did not have jurisdiction to do so, the resulting November 19, 1996 order was null and void.

We recognize that, pursuant to Rule 1701(b)(3), a trial court retains jurisdiction to proceed further in a matter even after an appeal has been filed when an order expressly granting reconsideration has been timely filed. Here, however, the time requirement mandated by Rule 1701(b)(3) has not been satisfied.[10]

■ Pursuant to Rule 1701(b)(3), after an appeal from an order is taken, a trial court retains jurisdiction to grant reconsideration of the order if two requirements are met.[11] First, an application for reconsideration of the order must be filed timely in the trial court. Pa. R.A.P. 1701(b)(3)(i). Here, this requirement has been satisfied because the City filed a Motion for Reconsideration of the October 2, 1996 order in the trial court on October 25, 1996, within the thirty day time period. (R.R. at 10a); *see* Note following Pa. R.A.P. 1701 (addressing subdivision (b)(3)). Second, an order expressly granting reconsideration of the prior order must be filed in the trial court within the time prescribed for the filing of a notice of appeal of the order. Pa. R.A.P. 1701(b)(3)(ii). Here, this requirement has not been satisfied because the trial court's order vacating the October 2, 1996 order was filed on November 19, 1996, forty-eight days after October 2, 1996.[12] Because the trial court failed to rule on the City's Motion for Reconsideration within the thirty day period, the Superior Court of Pennsylvania assumed jurisdiction over the appeal and the trial court was divested of its power to consider the Motion for Reconsideration. *See Pennsylvania Dep't of Transp., Bureau of Driver Licensing v. McMahon*, 539 Pa. 1, 650 A.2d 36 (1994); *Schoff* (holding that an order granting reconsideration will only be effective if it is made and entered on the docket before expiration of the applicable appeal period).

In short, the trial court lacked jurisdiction to enter the November 19, 1996 order, both because that order was untimely and because the Superior Court retained jurisdiction over the matter; thus, the November 19, 1996 order that attempted to vacate the October 2,

---

**9.** Rule 1701 provides:

(a) **General Rule**. Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

**10.** The City argues that an order vacating a prior order "is the functional equivalent of an express grant of reconsideration for purposes of ... Rule 1701[ (b)(3) ]." We need not address the merits of this argument because the time requirement mandated by Rule 1701(b)(3) has not been satisfied.

**11.** Rule 1701(b)(3) (emphasis added) provides:

(b) **Authority of a Trial Court or Agency After Appeal**. After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

. . .

(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:

(i) an application for reconsideration of the order is filed in the trial court or other government unit within the time provided or prescribed by law; *and*

(ii) an order expressly granting reconsideration of such prior order *is filed in the trial court* or other government unit within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such order, or within any shorter time provided or prescribed by law for the granting of reconsideration.

**12.** A notice of appeal must be filed within thirty days after an order is entered. Pa. R.A.P. 903(a). Here, a notice of appeal would have to be filed by November 1, 1996, thirty days after October 2, 1996.

1996 order was null and void. As a result, the trial court never vacated its October 2, 1996 order, and it remained in effect.

## II. *Trial Court's March 11, 1997 Order*

The trial court's March 11, 1997 order must be characterized as an "adjudication" of the City's October 25, 1996 Motion for Reconsideration.[13] Because the trial court failed to strictly adhere to "Rule [1701(b)(3) which] requires reconsideration to be expressly granted," *Schoff*, 386 Pa. Superior Ct. at 291, 562 A.2d at 913, the trial court had no jurisdiction to enter the March 11, 1997 order; [14] thus, it, too, is null and void.

█ Failure to expressly grant reconsideration within the time set by the rules for filing an appeal will cause the trial court to lose its power to act on the application for reconsideration. *Schoff*, *see* Note following Pa. R.A.P. 1701.[15] Here, the trial court's March 11, 1997 order did not *expressly* grant reconsideration and, thus, the trial court lost its power to act on the City's Motion for Reconsideration. As a result, the March 11, 1997 order, too, was null and void, leaving the October 2, 1996 order intact.

Accordingly, because the City's appeal was not filed until March 13, 1997, more than thirty days after October 2, 1996, and because there is no other order from which the City can timely appeal, we quash the appeal.[16]

### ORDER

AND NOW, this 27th day of March, 1998, the City of Philadelphia's appeal, dated

13. The trial court's March 11, 1997 order that attempted to reinstate and amend the October 2, 1996 order could not have accomplished this because, as discussed, the trial court's October 2, 1996 order had never actually been vacated. Further, the October 25, 1996 Motion for Reconsideration had not been expressly granted within the time prescribed for the City's filing of a notice of appeal from the trial court's October 2, 1996 order.

14. Rule 1701(b)(3) permits a trial court to grant reconsideration of an order if 1) an application for reconsideration is timely filed, *and* 2) an order expressly granting reconsideration is timely filed in the trial court. *See supra* pp. 106–107. Here, only the first requirement is satisfied. *Id.*

March 13, 1997, is quashed for lack of jurisdiction.

LEADBETTER, Judge, Dissenting.

I must respectfully dissent. I simply cannot agree that where a court has unequivocally ordered reconsideration within the thirty day time period required by 42 Pa.C.S. § 5505, that order becomes null and void if it is not entered on the docket until after the time has run. Other than dicta in *Schoff v. Richter*, 386 Pa.Super. 289, 562 A.2d 912, 913 (1989), I have found no cases requiring any more than that the court "expressly grant" reconsideration within the statutory period. *See Valentine v. Wroten*, 397 Pa.Super. 526, 580 A.2d 757, 758 (1990). Moreover, § 5505 specifically provides that the thirty day period begins to run from entry of the original order, but only requires the court to "modify or rescind" not to "enter an order modifying or rescinding" within that period. As the majority and other courts have noted, strict application of the thirty day rule often produces harsh results, and I would not extend that harshness by reading an additional technical requirement into § 5505.

Such a construction of the rule yields a particularly inequitable result under the circumstances presented here. The City, in reliance upon the trial court's vacatur of its original sanctions, withdrew its timely appeal from that first order. All parties and the court thereafter proceeded in good faith to litigate the matter on reconsideration, a modified order was entered, and the City again filed a timely appeal. Even if I agreed with

15. The Note following Pa. R.A.P. 1701 states:

> If the trial court or other government unit fails to enter an order "expressly granting reconsideration" (an order that "all proceedings shall stay" will not suffice) within the time prescribed by these rules for seeking review, [Rule 1701(a)] becomes applicable and the power of the trial court or other government unit to act on the application for reconsideration is lost.

16. Following oral argument, this court granted the City's Post–Argument Application to Submit Additional Case Citation. Because of our disposition in this case, we find that *Harris v. City of Philadelphia*, 137 F.3d 209 (3rd Cir.1998) is not relevant to our decision.

the majority's reading of § 5505, I would hear the appeal under the authority of *Great Am. Credit Corp. v. Thomas Mini–Markets, Inc.*, 230 Pa.Super. 210, 326 A.2d 517, 519 (1974), or at a minimum, reinstate the original appeal. *See Commonwealth v. Gordon*, 329 Pa.Super. 42, 477 A.2d 1342, 1346 (1984).

KELLEY, J., joins in this dissent.